IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**WENDELL DWAYNE BRAXTON,**

      **Plaintiff,**

      **v.**                            **Civil Action No. 2:16-cv-01899**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c).  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before this Court are Plaintiff's Memorandum of Law in Support of Plaintiff's Complaint for Review of the Decision of the Commissioner of Social Security (ECF No. 12), Brief in Support of Defendant's Decision (ECF No. 13) and Plaintiff's Reply Brief in Support of Plaintiff's Complaint for Review of the Defendant's Decision (ECF No. 14).

Wendell Dwayne Braxton (hereinafter referred to as Claimant), filed an application for SSI on June 14, 2011, alleging disability as of February 17, 2011.  His claim was denied initially and upon reconsideration. On May 4, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). The video hearing was held on March 13, 2014. Claimant appeared in Beckley, West Virginia, and the ALJ presided over the hearing from Charleston, West Virginia.  By decision dated June 12, 2014, the ALJ determined that Claimant was not entitled to benefits.  The ALJ's

decision became the final decision of the Commissioner on November 5, 2014, when the Appeals Council denied Claimant's request for review (Tr. at 5-8). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful

activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2016).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since June 14, 2011, the application date.  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic cervical and lumbar strain with degenerative disc disease, pain and radiculopathy; Meniere's disease with vertigo, nausea and ear ringing; unilateral hearing loss; mood disorder, not otherwise specified; anxiety disorder, not otherwise specified; and post-traumatic stress disorder (PTSD) (Tr. at 23-24).  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 25).  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations[1] (Tr. at 28).  As a result, Claimant cannot return to his past relevant work (Tr. at 32).  The ALJ concluded that Claimant could perform jobs with light physical demand such as an inspector; an assembler, food sorter, document preparer and folder, which exist in significant numbers in the national economy (Tr. at 24).  On this basis, benefits were denied.  (*Id.*)

---

[1] Claimant can: lift 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours in an 8-hour day; sit 45 minutes at a time, stand 45 minutes at a time and walk between 15 and 20 minutes at a time (Tr. at 28).  Claimant can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl.  He should have only occasional exposure to extreme cold, extreme heat, vibrations, loud noise and hazards, such as moving machinery and heights.  Claimant can understand, remember and carry out simple routine repetitive tasks, involving simple instructions performed in a low stress environment (defined as one in which there are no fast-paced production requirements and no over-the-shoulder supervision).  This person can respond appropriately to occasional interaction with co-workers, supervisors and the general public.  (*Id.*)

3

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations or substitute its judgment for that of the Commissioner.  *Id.*  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on November 10, 1963.  He completed the 12th grade in Fayette County, West Virginia (Tr. at 549).  He attended Beckley College in 2001 and 2002 (Tr. at 550). He has a

driver's license.  (*Id.*)  Claimant drives "short distances" (Tr. at 255).  Claimant lives with his girlfriend.  He is divorced from the same woman twice and has four children (Tr. at 547-548). There is a gap in Claimant's treatment received from H.A. Jafary, MD, FACP, from October 14, 2009 to January 17, 2011, because Claimant had lost his medical card (Tr. at 25, 344-345).

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that Defendant failed to properly evaluate Claimant's subjective complaints of pain and the impact of the pain on his ability to work (ECF No. 12).  Claimant argues that Defendant's reasons for not according controlling weight to the opinion of Claimant's treating physician are not supported by substantial evidence.  (*Id.*)  Additionally, Claimant asserts that Defendant erred by failing to include Claimant's limitations in the residual functional capacity (RFC) finding and the hypothetical question to the vocational expert.

Defendant asserts that the ALJ correctly discounted Claimant's subjective statements describing extreme back pain because Claimant's "symptoms were well-controlled with medication" (ECF No. 13). Defendant avers that the ALJ correctly discounted the opinion of Claimant's primary care physician and explained that the opinion conflicted with the physician's own treatment records.  (*Id.*)  Lastly, Defendant asserts that the ALJ's Residual Functional Capacity assessment was "based on a meticulous review of the entire record." (*Id.*)

<u>Residual Functional Capacity</u>

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to

routine, side effects of medication. *Id.* at *5. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." *Id.*

<u>Five-Step Sequential Evaluation</u>

In a recent decision by the United States Court of Appeals for the Fourth Circuit, *Monroe v. Colvin*[2], the court provided the following discussion regarding the ALJ's RFC assessment within the five-step sequential evaluation in making a disability determination:

> In determining a claimant's RFC, the ALJ must consider "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including those not labeled as severe at step two. *Mascio*, 780 F. 3d 632, at 635 (quoting C.F. R. § 416.945(a)(2)). He also must "consider all [the claimant's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); see 20 C.F.R. § 416.929(a). "When the medical signs or laboratory findings show that [the claimant] has a medically determinable impairment that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [his] symptoms limit [his] capacity for work." 20 C.F.R. § 404.1529(c)(1), 416.929(c)(1).
>
> Once the ALJ has determined the claimant's RFC, the ALJ then proceeds to step four, where the burden rests with the claimant to show that he is not able to perform his past work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Mascio*, 780 F.3d at 635. If he successfully makes that showing, the process proceeds to step five. *See Mascio*, 780 F.3d at 635.
>
> "At step five, the burden shifts to the Commissioner to prove by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education and work experience." *Id.* (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner

---

[2] *Monroe v. Colvin*, No. 15-1098 (4th Cir. June 16, 2016).

typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* If the Commissioner satisfies that burden, then the claimant is found to be not disabled and his benefits application is denied. *See id.*

<u>Discussion</u>

Claimant routinely complains of low back pain.  Claimant asserts that he wakes up in pain and that the pain increases with walking, standing and sitting (Tr. at 230, 237).  Claimant avers that he cannot stand for long periods of time (Tr. at 231).  H.A. Jafary, MD, FACP, has treated Claimant for low back pain, as well as other conditions.  On February 28, 2011, Dr. Jafary diagnosed Claimant with chronic intractable pain, low back pain, lumbar radiculopathy, hyperlipidemia, Meniere's disease, hypertension and GERD (Tr. at 354).

The ALJ found that Claimant's impairments of chronic cervical and lumbar strain with degenerative disc disease, pain and radiculopathy were severe. However, the ALJ held that none of the severe impairments individually or in combination met or medically equaled the severity of one of the listed impairments in 20 CFR 416.920(d), 416.925 and 416.926 (Tr. at 25).

Listing 1.04, which Claimant asserts he meets or equals, requires the following:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful

> dysesthesia, resulting in the need for changes in
> position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in
> pseudoclaudication, established by findings on
> appropriate medically acceptable imaging,
> manifested by chronic nonradicular pain and
> weakness, and resulting in inability to ambulate
> effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P., App. 1, § 1.04 (2016).

In the present matter, treating physician Dr. Jafary reported findings from Claimant's magnetic resonance imaging (MRI) of his lumbosacral spine on July 12, 2013. Among other things, Dr. Jafary found that at lumbar vertebrae level L5-S1, a disc nuclear herniation impinged "on both SI nerve roots. Bulging annulus causes significant bilateral faminal narrowing at L5-S1 level impinging on the L5 nerve roots" (Tr. at 520). Additionally, the ALJ's impression reported that a "Fairly large disc nuclear herniation in the midline is both S1 nerve roots and mildly impinging on the thecal sac. Bulging annulus at this level causes significant bilateral foraminal narrowing impinging on the L5 nerve roots on both sides" (Tr. at 520).

On January 21, 2014, Serafino S. Maducdoc Jr., M.D., completed a Disability Determination Examination on Claimant (Tr. at 533 -547). Dr. Maducdoc's impression included that Claimant "has herniated nucleus pulposus at L2, L3, L4, L5 and S1 with impingement of the nerve roots and sciatica, chronic lumbosacral strain…" (Tr. at 536). Dr. Maducdoc's examination resulted with a "poor" prognosis. (*Id.*) In summary Dr. Maducdoc stated the following:

> This 50-year-old male, black, divorced has chronic pain on his lower
> back since 1988, and he had x-rays and MRI done, which shows he
> has herniated nucleus pulposus, mostly at L5-S1. He had seen a
> neurosurgeon and was not recommended an operation, but he
> continued to have constant pain at L5-S1 lumbosacral spine
> radiating to both hips. It also radiates down the lower extremity up
> to the toes. He had a recent MRI which shows there is more
> herniated nucleus pulposus at L2, L3 and L4, but worse at L5-S1

with impingement of the nerve roots. (*Id.*)

In the order dated June 12, 2014, the ALJ held that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR 416.920(d), 416.925 and 416.926.  Specifically, the ALJ stated the following reasoning:

> The claimant's chronic cervical and lumbar strain with degenerative disc disease, pain and radiculopathy is best evaluated under listing 1.04 for disorders of the spine.  However, the record contains no evidence of nerve root compression, spinal arachnoidits or lumbar spinal stenosis as required by the listing. (Tr. at 25).

Contradicting herself, the ALJ stated in the same order that:

> There was a fairly large disc nuclear herniation in the midline extending to both sides and impinging on both S1 nerve roots and mildly impinging on the thecal sac.  A bulging annulus at this level causes significant bilateral foraminal narrowing impinging on the L5 nerve roots on both sides (Tr. at 24).  Further, Defendant argues that Claimant "simply could not meet the criteria for nerve root compression "as required by the listing," which includes multiple criteria he simply did not satisfy (e.g., sensory or reflex loss) (ECF No. 13).

The undersigned proposes that the District Judge find that the ALJ made contradictory findings regarding Claimant's MRI results and the presence or absence of nerve root compression.  Accordingly, the ALJ's RFC assessment did not resolve all inconsistencies in the evidence as a whole as required under SSR 96-8p.

<u>Conclusion</u>

The undersigned respectfully recommends that the District Judge find that the ALJ's opinion is not supported by substantial evidence and lacks the analysis and narrative discussion that would allow for meaningful review.  Additionally, it is unclear whether the RFC assessment, pursuant to SSR 96-8p, is based on all of the relevant evidence in the case record.

Accordingly, the undersigned is unable to determine if the entire case as a whole was taken into consideration when evaluating Claimant's impairments under Listing 1.04.

All other issues will not be discussed at this time due to the recommendation to remand for reconsideration of the record of evidence as a whole.

For the reasons provided above, the undersigned proposes that the presiding District Judge **GRANT** Plaintiff's Memorandum of Law in Support of Plaintiff's Complaint for Review of the Decision of the Commissioner of Social Security (ECF No. 12), **REVERSE** the final decision of the Commissioner, **REMAND** this case to the Commissioner for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  January 6, 2017

Dwane L. Tinsley
United States Magistrate Judge